**TWIN CITY FIRE INSURANCE COMPANY, Appellant,**

v.

**Anita CORTEZ et al., Appellees.**

**No. 8869.**

Court of Civil Appeals of Texas, Amarillo.

Feb. 27, 1978.

Rehearing Denied March 27, 1978.

Gibson, Ochsner, Adkins, Harlan & Hankins, Mac W. Hancock, III, Amarillo, for appellant.

Mike Millsap and Tom West (Mike Millsap), Lubbock, for appellees.

REYNOLDS, Justice.

The insurance carrier appeals from a judgment maturing an award of workers' compensation death benefit weekly payments because of a failure to continue timely payments and decreeing a lump sum payment without discount, together with penalty and attorney's fees. We affirm.

By a final 18 March 1975 award of the Industrial Accident Board, Twin City Fire Insurance Company was ordered to pay workers' compensation benefits as a result of the death of employee Pedro Cortez. The Board ordered that $63.00 be paid weekly, apportioned: $31.50 to Anita Cortez, the surviving widow, until her death or remarriage, less $6.30 per week for 300 weeks paid to her attorneys; $31.50 to Anita Cortez for the use and benefit of the minor children during their eligibility,[1] after which time the benefits were added to those payable to Mrs. Cortez, less $6.30 per week for 300 weeks paid to the attorneys. The company made the weekly payments through the period ending 6 June 1976.

In June of 1976, an agreement was approved by the Board authorizing the company to, and the company subsequently did, pay, in a lump sum discounted at four per cent, the remaining attorney's fee portion of the award before it became due. During the period from June 14 to July 25 of 1976, the company failed to make weekly payments to Mrs. Cortez, either individually or for the use and benefit of her minor children. No one contacted the company relative to the non-payments.

On 21 July 1976, Anita Cortez and her minor children initiated this litigation against Twin City Fire Insurance Company. The object of the suit was to mature the award into a lump sum with the imposition of the twelve per cent penalty and reasonable attorney's fees under the authorization of Vernon's Ann.Civ.St. art. 8307, § 5a,[2] which reads, in part:

Where the board has made an award against an association requiring the payment to an injured employe or his beneficiaries of any weekly or monthly payments, under the terms of this law, and such association should thereafter fail or refuse, without justifiable cause, to continue to make said payments promptly as

---

1. The weekly payments for the use and benefit of the minor children were to continue until the minors reached eighteen years of age and thereafter if actually dependent, or until twenty-five years of age if enrolled as a full time student.

2. All references to articles are to the articles of the Texas Workers' Compensation Law, Vernon's Ann.Civ.St. arts. 8306, *et seq.*

they mature, then the said injured employe or his beneficiaries, in case of his death, shall have the right to mature the entire claim and to institute suit thereon to collect the full amount thereof, together with twelve per cent penalties and attorney's fees, as herein provided for.

Eight days later when the company learned of the suit, two drafts, one payable to Mrs. Cortez and one payable to her for the use and benefit of the minor children, were issued for the weekly benefits for the period June 14 through July 25 of 1976. Thereafter, weekly drafts were issued to the date of trial. Mrs. Cortez refused to accept the tendered payments.

The cause was heard by the court without the intervention of a jury. Additional to hearing evidence of the previously recited facts, the court heard testimony from the manager of the company's records that: the "diary card" used to issue drafts would have been out of the file cabinet a lot more than normal because of the unusual amount of correspondence in connection with the lump sum payment of attorney's fees; the diary card "got out of that file," has not been located, and there is no explanation for its disappearance; the payments were stopped through mere clerical oversight or the neglect in losing the diary; and the company did not have a "back-up" system to make sure the checks were sent out on time. It was stipulated that Mrs. Cortez had a life expectancy of 27.6 years, and there was testimony on the issue of attorney's fees.

Finding that there was no justifiable cause for the company to cease making the weekly payments, the court matured the entire claim. Judgment was rendered for the sum of $90,417.60, computed at $63 per week for each of the 1,435.2 weeks (27.6 years) of Mrs. Cortez's life expectancy, without discount, together with a twelve per cent penalty of $10,850.11 and reasonable attorney's fees of $37,139.20,[3] subject to a remittitur of $7,000 "in the event that no appeal is taken" by the company, and a remittitur of $3,500 "in the event that no appeal of this cause is taken before the Supreme Court of Texas." The total amount of the judgment was apportioned between Mrs. Cortez and the minor children.

Appealing, the insurance company attacks the judgment by the use of twenty-four points of error. The first four points are contentions that the evidence is legally and factually insufficient to support the court's finding that there was no justifiable cause for the temporary failure to pay the weekly death benefits.

Quoting from the dissent in *Travelers Insurance Company v. Hill,* 163 Tex. 81, 351 S.W.2d 530 (1961), the company emphasizes that the punitive liability in the statute was not designed to provide windfalls for claimants and should not be visited upon it when the nonpayment was an honest mistake, was not willful, could have been avoided by a simple demand for payment, and was rectified immediately upon notice. The argument was not persuasive to the majority in *Hill,* where, at p. 532, the court specifically rejected the demand requirement, noting that the statute does not make a demand necessary.

■ The company was under a duty to pay the weekly payments as they became due, *Minor v. London Guarantee & Accident Co., Limited,* 280 S.W. 163, 165 (Tex. Comm'n App.1926, holding approved), unless it had justifiable cause for not doing so. Art. 8307, § 5a. The law itself does not define justifiable cause; however, it has been determined that justifiable cause is not shown by mere neglect to pay, *Minor v. London Guarantee & Accident Co., Limited, supra,* at 165, or by the failure to exercise reasonable diligence. *Home Indemnity Company v. Mosqueda,* 473 S.W.2d 456, 458 (Tex.1971).

■ Under the evidence in this cause, the trial court was justified in concluding that mere clerical oversight or neglect re-

---

**3.** The attorney's fees followed from the court's findings of entitlement "to reasonable attorney's fees in the sum of $30,139.20," and "to reasonable appellate attorneys' fees in the sum of $7,000, subject to remittitur as provided below."

sulted in the company's failure to perform its duty, and that reasonable diligence was not exercised to make sure that the payments were promptly made. Accordingly, the evidence is ample to support the court's finding that there was no justifiable cause, and the first four points are overruled. Absent a justifiable cause for the failure to promptly pay, Mrs. Cortez and her minor children had the right to mature and collect the entire claim and recover the penalty and reasonable attorney's fees as prescribed by the statute. *Minor v. London Guarantee & Accident Co., Limited, supra,* at 165.

■■■ Notwithstanding, the company argues, under its points five and six, that Art. 8306, § 8(d) (Supp.1978), which prohibits a lump sum payment to a widow or children where there is no remarriage or dispute as to liability, is controlling here and precludes maturing the award into a lump sum. A facet of the argument is that any apparent conflict between Art. 8306, § 8(d), and Art. 8307, § 5a, must be resolved in favor of Art. 8306, § 8(d), for, as the most recent legislation, it is the latest expression of the legislature that the benefits payable to a widow and children shall not be paid in a lump sum.

We perceive no conflict. Article 8306, § 8(d), operates on the initial award. Once that final award has been made, however, Art. 8307, § 5a, may, by its own terms, be invoked if the periodic payments are discontinued without justifiable cause. Thus, the two statutes operate in harmony in the situations to which they apply. Consequently, Art. 8306, § 8(d), does not control the situation envisioned by Art. 8307, § 5a, to arise after the initial, final award has been made. Points five and six are overruled.

■■■ Next, by points seven through nine, the company questions the court's refusal to discount the lump sum awarded as well as the allowance of attorney's fees on the non-discounted amount. The company cites Art. 8306a, which provides that when weekly compensation payments are accelerated by payment of a lump sum before becoming due, discounts shall be allowed for present payment at four (4%) per cent compounded annually.

Absent the citation of case authority, the answer is found in the language of Art. 8307, § 5a. The statute gives the "right to mature the entire claim and to institute suit thereon to collect the full amount thereof." The right given is by statutory directive which, operating in a situation different from those covered by Art. 8306a, does not provide for a discount. Conformably, the statute was the basis used in *Home Indemnity Company v. Mosqueda, supra,* for maturing into a lump sum without discount the total of the weekly benefit payments originally awarded. The points are overruled.

Utilizing its points ten through nineteen, the company challenges the legal and factual sufficiency of the evidence to sustain the awards of $30,139.20 and $7,000, respectively, as reasonable attorney's fees for the trial and appellate processes. Of the total attorney's fees fixed, the trial fees of $30,139.20 are one-third of the matured lump sum of $90,417.60 and 29.76% of that matured sum plus the $10,850.11 penalty. The company asserts that the recovery should not exceed the twenty-five per cent maximum allowed by Art. 8306, § 7d (Supp.1978), on a recovery in court on a matter carried from the Board. We do not agree.

■■■ In a suit to mature an award, the requirement as to amount of attorney's fees is, by statute, one of reasonableness, and Art. 8306, § 7d, has no application. *General Accident Fire and Life Assurance Corporation v. Hames,* 416 S.W.2d 894, 897–98 (Tex. Civ.App.—Dallas 1967, no writ). The court heard testimony from an attorney experienced in workers' compensation matters and litigation who had examined the file counsel had compiled in this cause. He expressed the opinion that a fee of one-third was not only fair, but is the usual percentage for Texas plaintiffs' attorneys. He further expressed the opinion that an attorney's fee of $10,000, with a provision for its remittitur if there is no appeal and a $5,000 remittitur if there is no appeal to the Supreme Court, was fair and reasonable for the appellate processes.

There is, of course, some evidence of the reasonableness of the fees fixed and we cannot say that the evidence is factually insufficient to support the award. Points ten through nineteen are overruled.

A related challenge, presented in points twenty and twenty-one, is to the judgment's provision for the imposition of attorney's fees for appeal without qualification. It is argued that the attorney's fees are unconditionally assessed without regard to which party may appeal or may ultimately prevail. To support the argument, the company relies on *King Optical v. Automatic Data Processing of Dallas, Inc.,* 542 S.W.2d 213 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). There, in a suit on an oral contract for services rendered, it was held that attorney's fees provided in the event of an appeal were improper and would be stricken where the awards were unconditional and do not purport to turn upon whether or not appellant succeeds in the appellate courts.

We decline to follow *King Optical* on the authority of *International Security Life Insurance Company v. Spray,* 468 S.W.2d 347 (Tex.1971), which approved a similarly worded judgment covering attorney's fees during appeal. Moreover, we think it is implicit in the judgment that the attorney's fees for the appellate processes may be incurred only if the company is unsuccessful on appeal. If the company is successful in setting aside the judgment, there would be no basis for the imposition of any attorney's fees; and, if the company is partially successful, the appellate court may require a remittitur. In either event, the vice asserted to be found in the judgment is not a reality. Points twenty and twenty-one are overruled.

The company uses its final three points to advance the contention that the court incorrectly computed the amount of benefits. Under these points, the company complains because the court, in calculating all weeks at the $63 weekly rate, gave no credit for the weeks for which the attorney's fee portion of the original award were paid in advance pursuant to the settlement agreement. We do not believe the company is in a position to complain.

In essence, the company complains that it was not given credit for payments made. If the company desired to establish the payment as a credit, it was required by Rule 95, Texas Rules of Civil Procedure, to plead distinctly the nature of such payment and the several items thereof. The company did not affirmatively plead these matters and, therefore, the issue was not raised. *See Southwestern Fire & Casualty Company v. Larue,* 367 S.W.2d 162, 163 (Tex.1963). Points twenty-two through twenty-four are overruled.

The judgment is affirmed.